LIVIA M. KISER (SBN 285411)
  *lkiser@kslaw.com*
MICHAEL B. SHORTNACY (SBN 277035)
  *mshortnacy@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310

*Attorneys for Defendant*
AMERICAN HONDA MOTOR CO., INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALEC PLOTTS, MARC CAINE, and LETICIA RIVERA, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>               Defendant. | Case No. 2:22-CV-04529-MWF-AS<br><br>**REPLY IN SUPPORT OF DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>FAC Filed:  October 17, 2022<br><br>Judge:      Hon. Michael W. Fitzgerald<br>Hearing:  March 13, 2023<br>Time:      10:00 a.m.<br>Place:      Courtroom 5A<br><br>**CLASS ACTION** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     PLAINTIFFS' FRAUD-BASED CLAIMS FAIL (Counts II, IV, VII, & IX) ....2

        A.      The FAC Fails to Plead an Affirmative Act of Concealment....................2

        B.      Plaintiffs Do Not Allege a Duty to Disclose................................4

                1.      Plaintiffs Ignore Controlling State Law............................4

                2.      The FAC Does Not Plausibly Allege Actual Knowledge ..............6

                        a.      The TSBs Do Not Establish Actual Knowledge ..................6
                        b.      Unverified Posts Do Not Show Actual Knowledge.............8
                        c.      Internal Reports ...................................................10
                        d.      No Exclusive Knowledge ...................................10

        C.      Plaintiffs Fail to Allege Intent to Defraud ...............................11

        D.      Plaintiffs' Omission and Concealment Claims are Inadequately Pled ....12

        E.      Plaintiffs' Consumer Protection Claims Fail for Additional Reasons
                (Counts II, IV and IX) ...............................................13

III.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL
        (Counts VI, VIII, & XI) ...................................................13

IV.     PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS FAIL .........14

        A.      Lack of Privity Bars Rivera's Claim (Count X) ......................14

        B.      Plotts and Rivera Fail to Plead Unmerchantability (Counts V & X).......15

V.      PLAINTIFFS' MMWA CLAIMS FAIL (Count I)............................16

VI.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS MUST BE
        DISMISSED (Count III)....................................................17

VII.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF.................18

VIII.   THE COURT SHOULD DISMISS ALL NATIONWIDE CLASS
        ALLEGATIONS ..........................................................19

IX.     CONCLUSION ..........................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Adams v. Nissan N. Am., Inc.*,
2018 WL 2338871 (S.D. Tex. May 4, 2018).......................................................16

6

7
*Am. Honda Motor Co. v. Super. Ct.*,
199 Cal. App. 4th 1367 (2011) ............................................................................6

8

9
*Apodaca v. Whirlpool Corp.*,
2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) .......................................................3

10

11
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................6

12

13
*Bey v. Mazda Motor of Am.*,
2023 WL 112555 (S.D.N.Y. Jan. 5, 2023) ........................................................17

14

15
*Bezirganyan v. BMW of N. Am., LLC*,
562 F. Supp. 3d 633 (C.D. Cal. 2021)................................................................16

16

17
*Bhatia v. 3M Co.*,
323 F. Supp. 3d 1082 (D. Minn. 2018) ..............................................................11

18
*Buetow v. A.L.S. Enterprises, Inc.*,
888 F. Supp. 2d 956 (D. Minn. 2012) ................................................................13

19

20
*Cadena v. Am. Honda Motor Co., Inc.*,
2019 WL 3059931 (C.D. Cal. May 29, 2019).....................................................14

21

22
*Cadena v. Am. Honda Motor Co., Inc.*,
2021 WL 9839349 (C.D. Cal. March 10, 2021).................................................17

23

24
*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)................................................................20

25

26
*Cho v. Hyundai Motor Co., Ltd.*,
2022 WL 16966537 (C.D. Cal. Oct. 21, 2022) ..................................................10

27
*Connick v. Suzuki Motor Co.*,
174 Ill. 2d 482 (1996) ...........................................................................................4

28

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Corazalla v. Quie*,
   478 N.W.2d 197 (Minn. 1991) .............................................................................11

*Deras v. Volkswagen Grp. of Am., Inc.*,
   2018 WL 2267448 (N.D. Cal. May 17, 2018).............................................10, 18

*Drake v. Toyota Motor Corp.*,
   2021 WL 2024860 (C.D. Cal. May 17, 2021).................................................4, 20

*Falco v. Nissan N. Am. Inc.*,
   2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) .......................................................7

*Fariello v. Checkmate Holdings, LLC*,
   918 N.Y.S.2d 408 (2011).....................................................................................11

*Flynn v. FCA US LLC*,
   2016 WL 5341749 (S.D. Ill. Sept. 23, 2016) ........................................................5

*Flynn v. FCA US LLC*,
   327 F.R.D. 206 (S.D. Ill. 2018) .........................................................................4, 5

*Franco v. Ford Motor Co.*,
   2022 WL 17726303 (C.D. Cal. Dec. 6, 2022)......................................................12

*Gardynski-Leschuck v. Ford Motor Co.*,
   142 F.3d 955 (7th Cir. 1998) ...............................................................................17

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
   393 F. Supp. 3d 871 (N.D. Cal. 2019)..................................................................17

*Gerstle v. Am. Honda Motor Co., Inc.*,
   2017 WL 2797810 (C.D. Cal. Jun. 28, 2017).......................................................20

*Glenn v. Hyundai Motor Am.*,
   2016 WL 7507766 (C.D. Cal. Nov. 21, 2016) .....................................................17

*Goldstein v. Gen. Motors, LLC*,
   2022 WL 484995 (S.D. Cal. Feb. 16, 2022).........................................................19

*Graphic Comm'ns Local 1B Health & Welfare Fund A v. CVS Caremark
   Corp.*,
   850 N.W.2d 682 (2014) .........................................................................................5

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Guajardo v. Skechers USA, Inc.*,
   503 F. Supp. 3d 746 (C.D. Ill. 2020) ..................................................................13

*Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*,
   16 N.E.3d 197 (Ill. App. 2014) ..........................................................................4

*Illinois Cent. Gulf r. Co. v. Dep't of Loc. Gov't Affs*,
   169 Ill. App. 3d 683 (1988) ......................................................................2, 3, 11

*Johnson v. Bobcat Co.*,
   175 F. Supp. 3d 1130 (D. Minn. 2016) ...........................................................3, 13

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ..............................................................16

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ............................................................9, 12

*Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*,
   807 N.E.2d 1165 (Ill. App. Ct. 2004) ..............................................................15

*Miner v. Fashion Enters., Inc.*,
   342 Ill. App. 3d 405 (2003) ...............................................................................5

*In re MyFord Touch Consumer Litig.*,
   2013 WL 9638983 .............................................................................................16

*Nguyen v. Nissan N. Am., Inc.*,
   2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ...................................................19

*Nickerson v. Goodyear Tire & Rubber Corp.*,
   2020 WL 4937561 (C.D. Cal. June 3, 2020) .....................................................10

*In re NJOY, Inc. Consumer Class Action Litig.*,
   2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ...................................................6

*O'Connor v. Ford Motor Co.*,
   477 F. Supp. 3d 705 (N.D. Ill. 2020) ............................................................5, 13

*O'Connor v. Ford Motor Co.*,
   567 F. Supp. 3d 915 (N.D. Ill. 2021) ...............................................................15

*Pascal v. Nissan N. Am, Inc.*,
   2021 WL 8441763 (C.D. Cal. Jul. 8, 2021) ......................................................19

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Pelayo v. Hyundai Motor Am., Inc.*,
  2021 WL 1808628 (C.D. Cal. May 5, 2021)...................................................12

*Phythian v. BMW of N. Am., LLC*,
  No. A11–40, 2011 WL 4435403 (Ct. App. Minn. Sept. 26, 2011)...................14

*Pinion v. Daimler AG*,
  2019 WL 11648560 (N.D. Ga. Nov. 4, 2019).................................................6, 8

*Pitts v. Volkswagen Grp. of Am., Inc.*,
  2021 WL 503710 (E.D. Va. Feb. 10, 2021) .....................................................12

*Podpeska v. Makita U.S.A. Inc.*,
  247 F. Supp. 3d 1001 (D. Minn. 2017) ..............................................................5

*Precht v. Kia Motors Am., Inc.*,
  2014 WL 10988343 (C.D. Cal. Dec. 29, 2014)...................................................9

*Punian v. Gillette Co.*,
  2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ..................................................18

*Rollolazo v. BMW of N. Am., LLC*,
  2017 WL 1536456 (C.D. Cal. Feb. 3, 2017) .....................................................15

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016)................................................................15

*Saghedi-A v. Daimler Trucks N. Am. LLC*,
  2021 WL 856919 (D. Minn. 2021) (Opp. ) .........................................................3

*Schrager v. N. Cmty. Bank*,
  767 N.E.2d 376 (Ill. App. Ct. 2002).................................................................5

*Schertz v. Ford Motor Co.*,
  2020 WL 5919731 (C.D. Cal. July 27, 2020) ...................................................19

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*,
  11 F. Supp. 3d 933 (D. Minn. 2014) ................................................................13

*Shamamyan v. FCA US LLC*,
  2020 WL 3643481 (C.D. Cal. Apr. 1, 2020).....................................................12

*Simon v. Philip Morris Inc.*,
  124 F. Supp. 2d 46 (E.D.N.Y. 2000).................................................................3

*Sloan v. Gen. Motors LLC*,
  2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ................................................. 10, 19

*Siqueiros v. Gen. Motors LLC*,
  2021 WL 2115400 (N.D. Cal. May 25, 2021) ..................................................... 18

*Sloan v. Gen. Motors LLC*,
  287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................. 3, 4, 10, 16

*Smith v. Monaco Coach Corp.*,
  334 F. Supp. 2d 1065 (N.D. Ill. 2004) ............................................................... 15

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...................................................................... 18, 19

*Sonneveldt v. Mazda Motor of Am., Inc.*,
  2021 WL 4813753 (C.D. Cal. July 29, 2021) ....................................................... 4

*Stephen v. PNC Fin. Servs. Grp., Inc.*,
  2022 WL 3134457 (C.D. Cal. Apr. 26, 2022) ....................................................... 3

*Tears v. Boston Scientific Corp*,
  344 F. Supp. 3d 500 (S.D.N.Y 2016) ........................................................... 3, 5, 6

*Thiedemann v. Mercedes-Benz*,
  872 A.2d. 783 (N.J. 2005) ................................................................................... 1

*Tromble v. W. Digital Corp.*,
  2021 WL 2165796 (N.D. Cal. May 27, 2021) ..................................................... 20

*Vinci v. Hyundai Motor Am.*,
  2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) ..................................................... 20

*Voelker v. Porsche Cars N. Am., Inc.*,
  353 F.3d 516 (7th Cir. 2003) ............................................................................. 14

*Wallace v. SharkNinja Operating, LLC*,
  No. 18-CV-05221-BLF, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) .............. 9

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ............................................................................. 9

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 ....................................................................................................... 9

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

**Statutes**

Magnuson-Moss Act ............................................................................ 14, 15

Minn. Stat. Ann. § 336.2-714 ................................................................... 17

N.Y. U.C.C. § 2-714(2) ........................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 8 ....................................................................................... 6

Fed. R. Civ. P. 9(b) .................................................................... 3, 6, 11, 12

Fed. R. Civ. P. 23(b)(3) ........................................................................... 20

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.   INTRODUCTION

The Opposition ignores central facts that are part of the record and compel dismissal.  Shortly before Plotts and Caine allegedly bought their vehicles (and shortly after Rivera allegedly bought hers), AHM released a repair for the audio issues about which Plaintiffs complain.  AHM made that repair available at no charge under the terms of the New Vehicle Limited Warranty ("NVLW").  AHM extended the warranty period, on its own initiative, to ensure that eligible vehicles could receive the repair.  AHM confirmed the efficacy of this repair in amendments to the relevant Technical Service Bulletin ("TSB").  And, in December 2021, months after the last of Plaintiffs' purchases, an independent expert confirmed that the repair was effective as part of the same *Conti* settlement that Plaintiffs now offer as purported evidence that AHM knew that their MY 2020-2022 Honda Odyssey, Pilot and Passport vehicles had an incurable defect.

Rather than addressing these fatal flaws, Plaintiffs rattle off a laundry list of cases discussing indicia for establishing pre-sale knowledge of a defect.  None supports the proposition that a manufacturer has committed fraud by failing to disclose a supposed defect when it had already developed and released a fix and made it available at no charge under a warranty.  While Plaintiffs argue that the repair does not work, they allege no facts demonstrating AHM had actual knowledge that it does not, whether at the time of Plaintiffs' purchases or afterwards.  Of course, the fact that some MY 2020-2022 Honda vehicles may require no-charge warranty repairs does not amount to deception—such repairs are an ordinary and expected part of owning an automobile.  Manufacturers offer warranties *because* repairs may sometimes be required, and warranties are part of the bargain when someone buys a car.  *See Thiedemann v. Mercedes-Benz*, 872 A.2d 783, 794 (N.J. 2005) ("The mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss to the vehicle purchaser.").  Plaintiffs' failure to allege facts supporting each of the elements of fraud defeats their fraud-based claims.

Plaintiffs' warranty and unjust claims are similarly flawed.  Plaintiffs' impatience with independent dealerships does not translate into a refusal to repair by AHM, which actively worked to resolve intermittent audio issues in the few affected vehicles.  Mot. at 4-5.  Plaintiffs try to manufacture a safety issue that supposedly rendered the vehicles unmerchantable, but rely on speculation about potential distraction (a reality of driving generally).  And Plaintiffs' focus on "pre-sale conduct" as the basis for their unjust enrichment claim is misplaced, given the FAC alleges no pre-sale statements or omissions that could give rise to that claim.

Plaintiffs again invoke the class action settlements in *Banh* and *Conti* but fail to address material differences: those cases involved different vehicles with different and more wide-ranging alleged problems.  That AHM elected to settle those actions says nothing about the claims here.  Plaintiffs' effort to ride the coattails of those settlements should be rejected.  Because Plaintiffs have already amended once and any further amendment would be futile, the FAC should be dismissed with prejudice.

## II.   PLAINTIFFS' FRAUD-BASED CLAIMS FAIL (Counts II, IV, VII, & IX)

Plaintiffs contend that AHM "had exclusive and superior pre-sale knowledge" that it "deliberately failed" to disclose at the time of sale.  Opp. at 3.  But "mere silence" cannot establish fraudulent concealment, and the FAC pleads no actionable omission. Each of Plaintiffs' fraud-based claims thus fails.

### A.    The FAC Fails to Plead an Affirmative Act of Concealment

For fraudulent concealment, Plaintiffs must allege that AHM engaged in "affirmative" acts of concealment.  *See* Mot. at 10.  Plaintiffs identify no such acts, arguing only that AHM failed to disclose the alleged defect.  More is required.

Plaintiffs' own authorities confirm that breach of a duty to disclose, taken alone, is insufficient to establish fraudulent concealment.  In *Illinois Cent. Gulf r. Co. v. Dep't of Loc. Gov't Affs*, 169 Ill. App. 3d 683, 689 (1988), the court held that "[p]assive concealment of pertinent facts during a business transaction does not constitute actionable fraud."  It dismissed a fraudulent concealment claim where the allegedly

undisclosed fact was a matter of public record and where defendant took no steps to suppress the information. *Id.* at 690.

An affirmative act of concealment is also required under Minnesota and New York law. *See* Mot. at 10. Plaintiffs do not mention AHM's authorities, much less attempt to distinguish them. Instead, they cite to *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1146 (D. Minn. 2016), but there the court held that plaintiffs pled "fraud by omission" where defendant made an affirmative representation that a fuel tank could hold more than 27 gallons while failing to disclose that the suction tube used with the tank prevented it from filling to that level. Similarly, in *Saghedi-A v. Daimler Trucks N. Am. LLC*, 2021 WL 856919, \*5 (D. Minn. 2021) (Opp. at 12), the court held that fraudulent concealment had been adequately pled where defendant made misleading marketing representations and provided misleading repair instructions while failing to disclose the true nature of the defect.

With respect to New York law, Plaintiffs mistakenly rely on *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000). There, the court held that fraud by omission requires not only a duty to disclose but also suppression of a material fact. And while Plaintiffs cite *Tears v. Boston Scientific Corp*, 344 F. Supp. 3d 500, 515 (S.D.N.Y 2018), the court did not reach the suppression requirement, because plaintiffs failed to plead the threshold existence of a duty to disclose with the particularity required under Rule 9(b).

Plaintiffs' remaining cases also require an affirmative act of concealment. *See Stephen v. PNC Fin. Servs. Grp., Inc.*, 2022 WL 3134457, at \*4 (C.D. Cal. Apr. 26, 2022) (fraudulent concealment sufficiently pled where a financial institution sent a letter representing that it was no longer the loan servicer but failed to disclose that it also no longer owned the loan); *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at \*7 (C.D. Cal. Nov. 8, 2013) (concealment sufficiently alleged where Whirlpool denied existence of a defect when consumers called to obtain repairs and made misleading representation about "commercial grade parts"); *Sloan v. Gen. Motors LLC*, 287 F.

Supp. 3d 840, 889 (N.D. Cal. 2018) (fraudulent concealment sufficiently pled given defendant's "active concealment").  In any event, *Apodaca* and *Sloan* examine whether a disclosure duty arises under California law, not pleading requirements for actual concealment under Minnesota, Illinois, or New York law.  *Apodaca*, 2013 WL 6477821, at *8; *Sloan*, 287 F. Supp. 3d at 865.

The FAC alleges no facts to suggest that AHM concealed or suppressed information.  Plaintiffs concede that they did not rely on any representation by AHM when buying their vehicles, Opp. at 5 n.2, and the TSBs and the ServiceNews article alleged as a basis for their claims were contemporaneously posted on NHTSA's website for all to see.

### B.   Plaintiffs Do Not Allege a Duty to Disclose

#### 1.   Plaintiffs Ignore Controlling State Law

Plaintiffs contend that AHM was required to disclose the alleged defect because it had "superior pre-sale knowledge."  Opp. at 4.  But numerous courts have recognized that under Illinois law, there exists no duty to disclose facts under the "superior knowledge" theory.  *Flynn v. FCA US LLC*, 327 F.R.D. 206, 218 (S.D. Ill. 2018) (ICFA and Illinois common law); *Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 16 N.E.3d 197, 216 (Ill. App. 2014).  Rather, Illinois law requires "a confidential or fiduciary relationship with [AHM] or that [AHM] was in a position of superiority over [plaintiffs]."  *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996); *see also Drake v. Toyota Motor Corp.*, 2021 WL 2024860, at *6 (C.D. Cal. May 17, 2021) (dismissing Illinois concealment claim: "Despite Plaintiffs' contention that there was a known safety risk, there is no allegation of a fiduciary or trust relationship between Plaintiffs and Toyota").  The "'special relationship threshold is a high one,' and it is not enough that 'plaintiffs purchased a [vehicle] from an authorized [Honda] dealer, and that [AHM] manufactured and distributed the [vehicle].'"  *Sonneveldt v. Mazda Motor of Am., Inc.*, 2021 WL 4813753, at *6 (C.D. Cal. July 29, 2021).  Rivera's fraudulent

concealment and ICFA claims should be dismissed.[1]

Plaintiffs' "superior knowledge" theory fares no better under Minnesota or New York law. The Minnesota Supreme Court has held that "superior knowledge" is a rarely invoked basis for establishing a duty to disclose and that it requires "actual knowledge" of the allegedly undisclosed fact. *Graphic Comm'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 697–98 (2014).

New York also generally requires actual knowledge. *Tears*, 344 F. Supp. 3d at 515. And for "superior knowledge to give rise to a duty to disclose, that information must be unavailable to the other party by reasonable inquiry, and the party in possession must know that the other party is acting on the basis of mistaken knowledge." *Id*. The FAC pleads no facts to suggest that AHM somehow knew that Caine was acting on mistaken knowledge when he allegedly bought his vehicle in New York. Indeed, Plaintiffs allege no communication whatsoever between Caine and AHM prior to his alleged purchase. *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718–19 (N.D. Ill. 2020). Nor could Caine establish that information regarding the audio issues could not be obtained through reasonable inquiry, given the information that was publicly available on NHTSA's website.[2]

---

[1] Plaintiffs' authorities are inapposite. In *Schrager v. N. Cmty. Bank*, 767 N.E.2d 376 (Ill. App. Ct. 2002), the court cited an issue of fact regarding a duty to disclose where defendants assumed the role of plaintiffs' financial advisor and made representations as to the business acumen of a partner without disclosing he was in bankruptcy. And while Plaintiffs cite *Flynn v. FCA US LLC*, 2016 WL 5341749 (S.D. Ill. Sept. 23, 2016), that decision was essentially disavowed in the same case. *Flynn v. FCA US LLC,* 327 F.R.D. 206, 218 (S.D. Ill. 2018).

[2] Plaintiffs' additional authorities similarly do not help them. *Miner v. Fashion Enters., Inc.*, 342 Ill. App. 3d 405, 421 (2003) affirmed the dismissal of the plaintiffs' claim for fraudulent concealment because, *inter alia*, the material omission was not specified and there was no indication of breach of duty to disclose concealed facts. *Podpeska v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001, 1011 (D. Minn. 2017) explained that a plaintiff must allege "actual knowledge of fraudulent concealment," something Plaintiffs fail to allege here.

**2.     The FAC Does Not Plausibly Allege Actual Knowledge**

Plaintiffs concede that Rule 9(b) applies to their fraud-based claims, including under the state consumer protection statutes, but argue that Rule 9(b) does not apply to the elements of knowledge and intent.  They cite *Tears,* but the *Tears* court dismissed a fraudulent concealment claim for failure to plead with the particularity required by Rule 9(b).  *Tears*, 344 F. Supp. 3d at 515.  In any event, Plaintiffs fail to allege knowledge with plausible, non-conclusory allegations of fact.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *7 (C.D. Cal. Oct. 20, 2014).

**a.     The TSBs Do Not Establish Actual Knowledge**

Plaintiffs improperly rely on TSB 20-058 as evidence of a supposedly uniform, incurable defect present in all Class Vehicles at the time they bought their vehicles.  Opp. at 7.  TSB 20-058, however, is not evidence that a uniform defect (or any defect) existed in the first place, much less that AHM had actual knowledge of it.  *See* Mot. at 11; *see also Am. Honda Motor Co. v. Super. Ct.*, 199 Cal. App. 4th 1367, 1378 (2011) (a TSB "is not and cannot be fairly construed ... as an admission of a design or other defect").

Plaintiffs cite *Pinion v. Daimler AG*, 2019 WL 11648560 (N.D. Ga. Nov. 4, 2019).  In *Pinion*, however, the court distinguished the decision in *American Honda* on the ground that:

> The TSBs at issue in those cases either discussed problems with some vehicles in a particular class, identified possible causes of those problems, or both.  The TSB at issue here is not so equivocal. It identifies, without any qualifying language, the specific cause of the exact problem that Plaintiffs experienced … It states that the problem affects "all vehicles" with Mars Red paint ….

*Id.* at *21.

TSB 20-058 bears no resemblance to the TSB in *Pinion*.  It states that *if* any

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

individual vehicle exhibits popping or crackling or no sound from the audio system, a "loose connection in the MOST network" is a "*possible*" cause.  Shortnacy Decl. Ex. 2.  And *if* a loose connection is to blame, TSB 20-058 provides a repair: replacing the MOST service cord and connectors.  The TSB makes clear that not all vehicles within the designated models and model ranges have connection issues.  It emphasizes the need for diagnosis by a competent technician and informs owners "you should not assume this bulletin applies to your vehicle, or that your vehicle has the condition described." *Id.*  And while Plaintiffs also point to TSB 21-013 as purported evidence of a uniform defect (Opp. at 8), TSB 21-013 extends the warranty only for *eligible* VIN numbers within the designated models and model ranges.  It does not support any inference that all MY 2020-2022 Honda Odysseys or Pilots or Passports shared the identical defect.

No better is Plaintiffs' citation to *Falco v. Nissan N. Am. Inc.*, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013).  Opp. at 8.  In *Falco*, Nissan redesigned the allegedly defective part in 2006 and issued the relevant TSB in July 2007, contributing to an inference that Nissan had been investigating the alleged defect but had identified no solution at the time plaintiffs bought their vehicles in 2005 and 2006.  *Id.* at *6.  Here, AHM issued TSB 20-058 prior to Plotts' and Caine's purchases, and less than three weeks after Rivera's purchase.  In other words, by the time Plaintiffs bought their Honda vehicles, AHM had already developed a solution available at no charge.

Plaintiffs next point to TSB amendments issued *after* Plaintiffs' purchases.  Opp. at 8.  However, those amendments simply added additional models to the list of potentially affected vehicles.  Mot. at 2, 13.  Far from indicating that AHM had not figured out how to resolve the issue, the amendments recommended the same repair.  *Id.*  The Job Aid cited in the FAC similarly confirms the efficacy of the repair, citing TSB 20-058 and 21-013 as examples of "good harness routing."  *Id.*

Finally, although they purport to invoke the *Conti* settlement as evidence AHM knew of a supposedly incurable defect in MY 2020-2022 vehicles, Plaintiffs do not dispute that as part of that settlement, AHM received additional confirmation that the

countermeasure set forth in TSB 20-058 worked.  In December 2021, an engineer jointly commissioned by AHM and *Conti* settlement class counsel submitted a report setting out his expert opinion that the TSB 20-058 countermeasures are efficacious.  Given that Plaintiffs bought their vehicles months beforehand, they cannot plead that AHM knew at the time of their purchases that the proposed countermeasure was ineffective.  Mot. at 13-14.

### b.  Unverified Posts Do Not Show Actual Knowledge

In a misguided attempt to show knowledge, Plaintiffs recite the same litany of customer complaints provided in the FAC, but ignore that:  1) the vast majority have no apparent connection to the asserted defect in this case, discussing unrelated alleged issues; 2) many precede the issuance of TSB 20-058, which issued a countermeasure for the intermittent audio issues; and 3) the FAC identifies only a single customer complaint preceding the Plotts purchase that even arguably speaks to the efficacy of the countermeasure, four such complaints preceding Caine's purchase, and zero preceding Rivera's purchase.[3]  These anonymous, unverified complaints furnish no plausible basis to conclude that AHM had actual knowledge that it was selling vehicles that could not be fixed under warranty if they were among the minority that developed a loose MOST connection.  Mot. at 15.

Plaintiffs try to inflate the number of customer complaints in several ways.  *First*, they argue that "the relevant focus" should include not only complaints regarding MY 2020-2022 vehicles, but also those made by "owners of vehicles of preceding model years, because such owners complained of the same symptoms."  Opp. at 9.  Contrary to Plaintiffs' assertion, however, they allege no facts to warrant inclusion of those earlier complaints.  Critically, the FAC nowhere alleges that the relevant hardware or software is the same between the vehicles at issue in *Conti* and those at issue here.  Plaintiffs'

---

[3] *See* FAC at p. 36 (NHTSA ID Number 11351137); p. 43 (NHTSA ID Number 11384709), p. 44 (NHTSA ID Number 11405195), p. 45 (NHTSA ID Number 11408535).

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

citation to *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093–94 (N.D. Cal. 2014) is accordingly inapposite.  The conclusory allegation that all vehicles shared an "Electrical Defect" is insufficient.  *See, e.g.*, *Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at \*9 (N.D. Cal. Mar. 9, 2020) (manufacturer's alleged knowledge of a defect in one type of blender could not be inferred from a pre-sale consumer report about a different model blender); *Precht v. Kia Motors Am., Inc.*, 2014 WL 10988343, at \*16 (C.D. Cal. Dec. 29, 2014) (striking allegations regarding 2010 Kia Optima and 2011 Kia Sedona where complaint provided only "bald assertion" that those vehicles shared the same Brake Defect as other class vehicles).

*Second*, Plaintiffs argue that pre-TSB 20-058 customer complaints are relevant because AHM "first issue[d] a repair instruction … a year prior, in 2019."  Opp. at 11 (citing FAC ¶ 34), apparently referring to a ServiceNews article issued in 2019 with respect to prior model year Honda vehicles.  But that article does not contain any repair instructions.  It diagnoses the potential cause of audio issues—which it attributes to service technician error, and not any defect in the vehicle—and explains that the entire harness would need to be replaced.  The first instructions on how to implement that repair, complete with specified part numbers and step-by-step guidance, arrived with TSB 20-058.  *See* FAC ¶ 37; Shortnacy Decl. Ex. 2 (TSB 20-058).

Even at its most exaggerated, however, the anonymous complaints remain insufficient to plead actual knowledge.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (without adequate allegations that manufacturer actually received communications, knowledge finding would be speculative at best); *cf. Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026–28 (9th Cir. 2017) (pre-sale knowledge pled where plaintiffs "explained in detail how those complaints were lodged, how [defendant] responded, and the mechanism through which information travelled from consumers to [defendant's] management").

Further, the Ninth Circuit requires an *unusual* number of complaints.  *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at \*7 (N.D. Cal. Aug. 1, 2017) (cleaned up)

(emphasis in original).  At most, Plaintiffs identify 28 complaints from Class Vehicle owners prior to Rivera's purchase, 63 prior to Plotts' purchase, and 74 prior to Caine's purchase—many of which discuss issues unrelated to the alleged defect.  Plaintiffs allege no facts to suggest that those numbers are unusual in the context of the hundreds of thousands of vehicles sold.  *See, e.g.*, *Nickerson v. Goodyear Tire & Rubber Corp.*, 2020 WL 4937561, at *9 (C.D. Cal. June 3, 2020) (finding over 100 NHSTA consumer complaints related to Marathon Tires insufficient to impute knowledge); *Sloan*, 287 F. Supp. 3d at 865 (81 complaints posted over the course of seven years not an unusually high number); *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) ("Forty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints"); *Cho v. Hyundai Motor Co., Ltd.*, 2022 WL 16966537, at *10 (C.D. Cal. Oct. 21, 2022) (allegations of NHTSA complaints insufficient to raise inference of knowledge because plaintiffs failed to explain how additional complaints they identified would tip the scale towards a statistically significant number).

### c.    Internal Reports

Plaintiffs concede that the FAC's boilerplate allegations regarding "pre-launch testing" and "dealership reports" are insufficient, arguing only that Honda "gained pre-sale knowledge through multiple means."  Opp. at 9.  By "multiple means" they apparently mean the FAC's other insufficient allegations regarding customer complaints and the TSBs.  The only plausible inference that can be drawn is that AHM developed a solution, confirmed its efficacy both before and after its release, and received, at most, four customer complaints that could even arguably be read as a criticism of the countermeasure by the time Caine allegedly bought his car.

### d.    No Exclusive Knowledge

Plaintiffs' repeated assertions that AHM had "exclusive knowledge" hold no water because AHM's TSBs and ServiceNews articles were publicly available.  The *Conti* settlement, too, was a matter of public record.  Plaintiffs argue that they have no

obligation to investigate before purchasing their vehicles, but reliance on the purported omissions is plainly unjustifiable where they ignore publicly available information. *See Illinois Cent. Gulf r. Co.*, 169 Ill. App. 3d at 690; *Fariello v. Checkmate Holdings, LLC,* 918 N.Y.S.2d 408, 409 (2011) (no justifiable reliance on alleged misrepresentations where "information was readily verifiable through public records"); *Corazalla v. Quie,* 478 N.W.2d 197, 198–99 (Minn. 1991) (affirming summary judgment on claims of fraud and negligent disclosure given "evidence of public record, readily available for inspection by a purchaser ... clearly discloses the fact [at issue]"). Plaintiffs never explain why they are differently situated from the hundreds of people they purport to identify in their FAC who visited the NHTSA website.

### C.   Plaintiffs Fail to Allege Intent to Defraud

Plaintiffs also plead no facts supporting an inference that AHM intended to defraud consumers. They try to distinguish *Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082, 1095–96 (D. Minn. 2018) on the ground that it involved an affirmative misrepresentation (Opp. at 13), but *Bhatia* involved omissions too. *Id.* at 1095 (citing allegations of active concealment and failure to warn). They claim that *Bhatia* applies only to Minnesota claims, but the court applied Rule 9(b) to all asserted fraud-based claims, including non-Minnesota claims. *Id.* at 1095–96 n.3.

Finally, Plaintiffs fall back on the argument that they need not plead intent with specificity. Opp. at 13. But "[w]hile intent can be alleged generally, the allegations cannot be conclusory or based on speculation." *Bhatia*, 323 F. Supp. 3d at 1095. Tellingly, the only allegations of intent Plaintiffs can point to are wholly conclusory. *See* Opp. at 13 ("Honda's actions and omissions were done … with intent to defraud," and "AHM "has profited and benefitted from [the] purchase of Class Vehicles containing the Electrical Defect") (citing FAC ¶¶ 179–80). Moreover, Plaintiffs' own allegations confirm the fundamental implausibility of their fraud claims. In TSB 20-058, AHM provided a solution to intermittently occurring audio issues. It extended the

NVLW of its own volition and jointly retained (with *Conti* settlement class counsel) an independent expert to verify the efficacy of the countermeasure.  And AHM made information regarding the supposed "Electrical Defect" available to NHTSA and through the *Conti* settlement.  Plaintiffs do not plausibly allege intent to defraud.

### D.   Plaintiffs' Omission and Concealment Claims are Inadequately Pled

Plaintiffs contend that "a plaintiff alleging an omission-based claim will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim."  Opp. at 4–5 & n.2 (citing *MacDonald*, 37 F. Supp. 3d at 1096).  Although Rule 9(b) is "somewhat relaxed" for fraudulent omission claims, *see Franco v. Ford Motor Co.*, 2022 WL 17726303, at *4 (C.D. Cal. Dec. 6, 2022), a plaintiff must still "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.'" *Shamamyan v. FCA US LLC*, 2020 WL 3643481, at *7 (C.D. Cal. Apr. 1, 2020).

Plaintiffs fail to do so.  They rely on generalized allegations that they reviewed Honda's website but identify no statements or representations that could have deceived them.  Mot. at 8–9.  Rivera also claims to have reviewed her vehicle's Monroney sticker, *see* FAC ¶ 115, but fails to allege any relevant content.[4]  *Pelayo v. Hyundai Motor Am., Inc.*, 2021 WL 1808628, at *6 (C.D. Cal. May 5, 2021) (emphasis in original).  The Court cannot infer from such conclusory allegations that information about an alleged defect "should or could have been revealed" in the materials that Plaintiffs allegedly reviewed.  *Id.* at *6-7 (dismissing claims for common law fraud, unjust enrichment and violations of various state consumer protection laws under Rule 9(b)).

---

[4] In any event, Monroney stickers are not expected to disclose potential defects.  *See Pitts v. Volkswagen Grp. of Am., Inc.*, 2021 WL 503710, at *8 (E.D. Va. Feb. 10, 2021) (accepting Monroney stickers list certain required information "but [do] not describe or represent systems' functions and/or limitations")).

These failings independently compel dismissal of Rivera's ICFA claim, which requires Rivera to identify a specific communication from which the allegedly undisclosed communication was omitted.  Generic references to AHM's website or the Monroney sticker will not do.  Mot. at 10; *Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 754 (C.D. Ill. 2020); *O'Connor*, 477 F. Supp. 3d at 718–19.  Plaintiffs did not respond to AHM's motion or authorities on this issue.

**E.     Plaintiffs' Consumer Protection Claims Fail for Additional Reasons (Counts II, IV and IX)**

Plotts is not entitled to injunctive relief under the MCFA because he fails to allege any likelihood of future deception.  *See Johnson*, 175 F. Supp. 3d 1130; *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933, 939 (D. Minn. 2014).  The relief he seeks is not "primarily aimed at altering the defendant's conduct," *Buetow v. A.L.S. Enterprises, Inc.*, 888 F. Supp. 2d 956, 960 (D. Minn. 2012), but rather, payment of monetary damages.  Mot. at 16.

Plotts also ignores AHM's authorities requiring him to allege that he and AHM were parties to a shared transaction or agreement.  Mot. at 16-17.  Instead, he responds with a discussion on reliance, citing a case that does not address or consider the "shared agreement" requirement.  *See* Opp. at 15 (citing *McDougall v. CRC Indus., Inc.*, 523 F Supp. 3d 1061 (D. Minn. 2021)).

Finally, the gravamen of Rivera's ICFA claim is breach of warranty, regardless of how she tries to characterize it now.  *See* FAC ¶¶ 6-7, 273 (alleging that her vehicle requires repairs or replacement and is worth less money as a result).  The ICFA does not apply to breach of contract claims.  Mot. at 17.

**III.   PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL (Counts VI, VIII, & XI)**

Plaintiffs claim that AHM breached its express warranty because its countermeasures did not permanently fix Plaintiffs' vehicles.  Opp. at 17.  But that is not the standard for an express warranty claim.  Plaintiffs' vehicles were repaired during

13

the warranty period at no cost to Plaintiffs, in full compliance with the Limited Warranty.  FAC ¶¶ 68–69, 71 (Plotts), ¶¶ 100, 102, 104 (Caine), ¶¶ 122, 125, 132-134, 138 (Rivera).  *See Phythian v. BMW of N. Am., LLC*, 2011 WL 4435403 at *4–5 (Ct. App. Minn. Sept. 26, 2011) (affirming summary judgment where dealerships identified and repaired each defect in the plaintiff's vehicle under warranty at no cost to plaintiff). By providing countermeasures for the audio problem, providing instruction to Honda dealership technicians on how to implement them, and facilitating free repairs to Plaintiffs via independent Honda dealers, AHM has affirmatively honored its express warranty obligations.

Rather than acknowledge these facts, Plaintiffs accuse AHM of "blaming" its dealerships for breaching warranties.  As stated in AHM's opening papers, AHM doubts the FAC's allegations would be sufficient to show a refusal to repair by any of the dealerships.  But regardless, the allegations certainly do not plead a refusal to repair by *AHM*.  Plaintiffs argue that Honda's authorized dealers are its agents for the purpose of vehicle repairs (Opp. at 17), but as shown in AHM's opening papers, courts have rejected similarly unsubstantiated agency allegations.  *Cadena v. Am. Honda Motor Co., Inc.*, 2019 WL 3059931, at *10 (C.D. Cal. May 29, 2019) ("plaintiffs have not identified any authority for the proposition that auto dealerships are the agents of automobile manufacturers or national distributors merely because the dealers perform warranty repairs").

## IV.   PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS FAIL

### A.   Lack of Privity Bars Rivera's Claim (Count X)

Plaintiffs do not deny that Illinois requires privity for merchantability claims. Rather, they claim that the privity requirement "has been 'relaxed' when (1) a manufacturer has extended a written warranty with a product; and (2) a consumer brought an action against the manufacturer under the Magnuson-Moss Act."  Opp. at 18 (citing *Shoop v. DaimlerChrysler Corp.*, 371 Ill. App. 3d 1058 (2007)).  As the Seventh Circuit held in *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th

Cir. 2003), however, "a valid claim for breach of the implied warranty of merchantability under the Magnuson–Moss Act must allege privity in accordance with the applicable state law." *See also Smith v. Monaco Coach Corp.*, 334 F. Supp. 2d 1065, 1069 (N.D. Ill. 2004) (MMWA does not extend implied warranties to customers not protected by traditional state law due to absence of privity).

Even assuming that the privity requirement is somehow relaxed for MMWA claims, separate claims based solely on the UCC implied warranties, are still "properly dismissed" where plaintiffs lack privity with the manufacturer. *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 944 (N.D. Ill. 2021) (cleaned up); *see also Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1169 (Ill. App. Ct. 2004) ("under our internal law, our supreme court still requires privity even where the manufacturer issues a written warranty, but has held that under Magnuson-Moss privity is deemed to exist where there is a written warranty"); *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456, at *16 (C.D. Cal. Feb. 3, 2017) (dismissing Illinois implied warranty claim for lack of privity).

Nor does Plaintiffs' other purported "exception" apply. As a matter of law, authorized Honda dealers are not AHM's agents. *See* Mot. at 9 (collecting cases). And the "direct dealing exception" under Illinois law is inapplicable because Plaintiffs have not alleged claims based on any affirmative statements by AHM or any other interaction with AHM at or before the point of sale. By Plaintiffs' own admission, this is a case about alleged omissions, and is not like *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016), where "Plaintiffs allege[d] factual support of specific instances" of direct dealing.

## B. Plotts and Rivera Fail to Plead Unmerchantability (Counts V & X)

Plotts and Rivera have not pleaded that their vehicles were unmerchantable at the time of purchase. While they cite several cases where a court concluded the complaint alleged safety issues that rendered the subject vehicles unfit for their ordinary purpose of providing reasonably reliable and safe transportation, Plaintiffs allege nothing of the

kind here.

In *Sloan*, plaintiffs alleged that an oil consumption defect in vehicle engines created a risk of sudden engine shutdowns or engine fires. 287 F. Supp. 3d 840. They also alleged instances "in which spark plugs and lifters fail[ed] unexpectedly," vehicles emitted white smoke, or engines were "sluggish or suddenly shut down." *Id.* at 880. In *In re MyFord Touch Consumer Litig.*, plaintiffs claimed to have personally experienced back-up camera and rear defroster failures that allegedly impaired visibility and created risk for accidents. 2013 WL 9638983, at ¶¶ 24, 58; *see also Adams v. Nissan N. Am., Inc.,* 2018 WL 2338871, at *9 (S.D. Tex. May 4, 2018), report and recommendation adopted, 2018 WL 2337135 (S.D. Tex. May 23, 2018) (safety concern sufficiently alleged where "the defective dashboard reflects off the windshield, drivers 'struggle to see' and 'their view is obstructed'").

In contrast, Plaintiffs allege only that on occasion, Plotts had to pull his vehicle over to restart it because he was "distracted by a loud crackling and popping noise." (FAC ¶ 4), and Rivera's daughter wore noise-cancelling headphones to avoid "bothersome" noise (FAC ¶ 120).   They do not allege that they needed to stop driving their cars as a result.  Plaintiffs also cite unverified customer complaints to NHTSA, alleging that the periodic popping and crackling was "distracting."  (FAC ¶¶ 8, 29.) Such allegations are insufficient.  *See Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing merchantability claim where plaintiffs did not allege they stopped using their vehicles despite allegations that defect in their pre-collision braking feature created a safety hazard); *Bezirganyan v. BMW of N. Am., LLC*, 562 F. Supp. 3d 633, 642 (C.D. Cal. 2021) (dismissing implied warranty claim where plaintiff "offer[ed] nothing to help the Court understand how loud the squeal of his brake in fact is, other than to say that it is 'extremely loud'").

## V.   PLAINTIFFS' MMWA CLAIMS FAIL (Count I)

Plaintiffs concede that they failed to allege an amount in controversy, which is required to plead a MMWA claim.  Opp. at 21.

Plaintiffs fail to establish that they can satisfy the MMWA's $50,000 jurisdictional requirement.  While they provide each vehicle's alleged purchase price, their true damages (if any) would be far less.  The MMWA computes damages in accordance with the underlying state law.  *See Bey v. Mazda Motor of Am.*, 2023 WL 112555, at *4 (S.D.N.Y. Jan. 5, 2023).  In New York, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted."  *Id.* (citing N.Y. U.C.C. § 2-714(2)).  Similarly, damages for breach of warranty in Minnesota is the difference between the "value of the goods accepted and the value they would have had if they had been as warranted."  Minn. Stat. Ann. § 336.2-714.  In a case involving the MMWA and breach of warranty under Illinois law, the Seventh Circuit determined an amount in controversy to be "likely short of $5,000" using "the price of a new car **less the value** of the used vehicle returned to [the manufacturer], **less the value** of the use [the consumer] obtained" from the car."  *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998) (cleaned up) (emphasis added).  Under this authority, amendment would be futile.

## VI.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED (Count III)

To avoid dismissal, Plaintiffs attempt to characterize their unjust enrichment claims as involving only "pre-sale" conduct.  Opp. at 22.  Although Plaintiffs purport to cite authorities holding that an unjust enrichment claim can be pled under those circumstances, in two of the three cases, the plaintiffs did not allege express warranty claims.  *See In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 875 (N.D. Cal. 2019), *Cadena v. Am. Honda Motor Co., Inc.*, 2021 WL 9839349, at *1, *5 (C.D. Cal. March 10, 2021).  In the third, *Glenn v. Hyundai Motor Am.*, 2016 WL 7507766, at *4–*6 (C.D. Cal. Nov. 21, 2016), the court declined to dismiss an unjust enrichment claim where plaintiffs alleged a design defect not covered by warranty.  Here, however, Plaintiffs expressly allege that the supposed "Electrical Defect" is

covered under the NVLW.  *See* FAC ¶¶ 220, 249, 285.

Moreover, Plaintiffs are wrong that the unjust enrichment claim centers on "pre-sale conduct."  As part of the claim, Plaintiffs seek an order compelling AHM "to offer, under warranty, remediation solutions that Defendant identifies" and to "provide Class members with adequate repairs or with replacement components that do not contain the defects alleged herein."  FAC ¶ 190.  Because the NVLW defines the obligations of AHM with respect to the asserted defect, the claim should be dismissed.  *See Siqueiros v. Gen. Motors LLC*, 2021 WL 2115400, at *10 (N.D. Cal. May 25, 2021) ("[n]umerous cases indicate that the mere existence of a contract that defines the parties' rights bars a claim for unjust enrichment"); *Deras*, 2018 WL 2267448, at *3 (dismissing claim where plaintiff "contend[ed] that the alleged defect was covered by the express new vehicle warranty").

Plaintiffs also ignore well-established law holding that unjust enrichment claims premised upon the same underlying allegations as fraud-based claims must be dismissed when the fraud-based claims are dismissed.  *See Punian v. Gillette Co.*, 2016 WL 1029607, at *18 (N.D. Cal. Mar. 15, 2016) (dismissing unjust enrichment cause of action premised upon the same factual allegations as dismissed FAL, CLRA and UCL claims); *Sloan*, 2017 WL 3283998, at *10 (dismissing unjust enrichment claim tied to omission theory where complaint did not plausibly allege defendant's pre-sale knowledge of a defect).

Finally, the unjust enrichment claim must be dismissed because Plaintiffs fail to plead lack of an adequate remedy at law.  Plaintiffs do not explain how their warranty and statutory fraud claims fail to provide a sufficient legal remedy, alleging only in conclusory fashion that money damages are not an adequate remedy for the unjust enrichment claim.  FAC ¶ 190.  This alone is grounds for dismissal.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

## VII.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

Plaintiffs' failure to plead lack of an adequate remedy at law also warrants

dismissal of their equitable claims.  *Id.* at 844; *see also Schertz v. Ford Motor Co.*, 2020 WL 5919731, at * 2 (C.D. Cal. July 27, 2020) (dismissing claims for an injunction and restitution for failure to allege lack of an adequate legal remedy as required under *Sonner*).  Plaintiffs are wrong that they have Article III standing to pursue injunctive relief, regardless of whether Plaintiffs specifically allege they will purchase another Honda vehicle in the future.  Opp. at 25.  Here, Plaintiffs specifically request "a declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures."  Prayer ¶ E.  But Plaintiffs' own cited authorities confirm they are not entitled to such relief because there is no imminent risk they will be deceived again.  *See Goldstein v. Gen. Motors, LLC*, 2022 WL 484995, at *7 (S.D. Cal. Feb. 16, 2022); *see also Nguyen v. Nissan N. Am., Inc.*, 2017 WL 1330602, at *5 (N.D. Cal. Apr. 11, 2017) (because "the FAC contains no allegations that Plaintiff intends to purchase a Class Vehicle in the future, or indeed any other product from [Honda]," Plaintiffs' allegations fall short of establishing a real and immediate threat of injury of deception).

Plaintiffs argue they are entitled to injunctive relief in the form of repairs to their vehicles as a result of a purported "safety issue."  Opp. at 24–25.  As discussed above, Plaintiffs have not plausibly alleged any colorable safety issue resulting from popping and crackling or silence from their vehicle audio systems.  Their cited authority is inapposite.  *See Pascal v. Nissan N. Am, Inc.*, 2021 WL 8441763, at *1 (C.D. Cal. Jul. 8, 2021) (lack of adequate remedy at law where plaintiffs sought repair of defect resulting in exhaust and carbon monoxide in driving compartment).

## VIII.  THE COURT SHOULD DISMISS ALL NATIONWIDE CLASS ALLEGATIONS

Plaintiffs ask the Court to wait until class certification to decide whether they have standing to bring claims under the laws of 47 states where no plaintiff resides, and where no plaintiff claims to have bought an automobile, pointing to a handful of cases in which the court decided to do so.  Opp. at 23.  Yet Plaintiffs do not meaningfully

distinguish the "overwhelming[]" number of decisions that addressed this standing issue in advance of class certification. *Drake*, 2020 WL 7040125, at *3. As many courts in this Circuit have recognized, "while *Mazza* was decided at the class certification stage, the decision 'applies generally and is instructive when addressing a motion to dismiss." *Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, at *5 (C.D. Cal. Apr. 10, 2018) (collecting cases).

The reason for dismissing for lack of standing now, as opposed to waiting for class certification, is obvious. Courts are reluctant to force a defendant to undertake the expense and burden of engaging in nationwide discovery when the majority of states lack a representative plaintiff. *See In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015). Here, there are Plaintiffs from only *three* states. Plaintiffs do not dispute that the laws of Minnesota, Illinois, and New York cannot be applied extraterritorially. And Plaintiffs' common law claims cannot be adjudicated in a nationwide class due to material differences in state law that will necessarily preclude any finding of Rule 23(b)(3) predominance or superiority. *See* Mot. at 22-23; *see also Tromble v. W. Digital Corp.*, 2021 WL 2165796, at *2 (N.D. Cal. May 27, 2021) (explaining that *Mazza* unequivocally held that the 'elements necessary to establish a claim for unjust enrichment ... vary materially from state to state'"); *Drake*, 2020 WL 7040125, at *3 (striking nationwide fraudulent concealment claim).[5]

The Opposition provides no valid reason as to why the Court should wait until class certification given that the issues are plain enough here to be addressed at the pleadings stage. Plaintiffs' nationwide claims should be dismissed.

/ / /

---

[5] Plaintiffs argue that Plaintiffs putative nationwide claims should be allowed to proceed under California law. But unlike *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810 (C.D. Cal. Jun. 28, 2017), this action does not involve any California plaintiffs asserting any California statutory causes of action.

**IX.    CONCLUSION**

Plaintiffs' FAC should be dismissed in its entirety, with prejudice.


Dated: February 8, 2023                **KING & SPALDING LLP**


By: */s/ Michael B. Shortnacy*
Michael B. Shortnacy

Attorneys for Defendant
AMERICAN HONDA MOTOR CO., INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant American Honda Motor Co., Inc., certifies that this brief contains 6,960 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 8, 2023                    **KING & SPALDING LLP**

By: */s/ Michael B. Shortnacy*
Michael B. Shortnacy

Attorneys for Defendant
AMERICAN HONDA MOTOR CO., INC.

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT