| | |
|---|---|
| 1 | MICHAEL B. SHORTNACY (SBN 277035) |
| | *mshortnacy@shb.com* |
| 2 | SHOOK, HARDY & BACON L.L.P. |
| 3 | 2121 Avenue of the Stars, Suite 1400 |
| | Los Angeles, CA 90067 |
| 4 | Telephone: (424) 285-8330 |
| | Facsimile: (424) 204-9093 |
| 5 | |
| 6 | LIVIA M. KISER (SBN 285411) |
| | *lkiser@kslaw.com* |
| 7 | KING & SPALDING LLP |
| | 633 West Fifth Street, Suite 1600 |
| 8 | Los Angeles, CA 90071 |
| | Telephone: (213) 443-4355 |
| 9 | Facsimile: (213) 443-4310 |
| 10 | |
| | Attorneys for Defendant |
| 11 | AMERICAN HONDA MOTOR CO., INC. |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEC PLOTTS, MARC CAINE, and LETICIA RIVERA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>Defendant. | Case No. 2:22-cv-04529-RGK-AS<br><br>**REPLY IN SUPPORT OF DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF PLAINTIFFS' PROPOSED EXPERT WITNESS DARREN MANZARI**<br><br>Date: December 2, 2024<br>Time: 9:00 a.m.<br>Place: 255 East Temple Street<br>Los Angeles, CA 90012<br>Courtroom 850, 8th Floor |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1
ARGUMENT ........................................................................................................3
    I.    Manzari's Safety Opinion Lacks Sufficient Facts and a Reliable Methodology. ...............................................................................3
    II.   Manzari's Opinion Relating to the Existence of a Unitary Defect is Not Based on Sufficient Facts or a Reliable Methodology ..............................6
    III.  Manzari's "Damages" Opinion Is Unreliable. ...........................................8
CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chapman v. Maytag Corp.*,
    297 F.3d 682 (7th Cir. 2002) ................................................................................. 3

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) ................................................................................. 5

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
    2016 WL 1029463 (N.D. Cal. Mar. 15, 2016) ...................................................... 3

*In re FCA US LLC Monostable Electronic Gearshift Litigation*,
    2022 WL 4211149 (E.D. Mich. Sep. 22, 2022) .................................................... 9

*In re General Motors Ignition Switch Litig.*,
    427 F. Supp. 3d. 374 (S.D.N.Y. 2019) .................................................................. 9

*Grodzitsky v. Am. Honda Motor Co.*,
    957 F.3d 979 (9th Cir. 2020) ................................................................................. 1

*Johnson v. Nissan N. Am., Inc.*,
    2022 WL 2869528 (N.D. Cal. July 21, 2022) ....................................................... 3

*Krouch v. Wal-Mart Stores, Inc.*,
    2014 WL 5463333 (N.D. Cal. Oct. 28, 2014) ....................................................... 1

*MasForce Eur., BVBA v. MEC3 Co.*,
    2013 WL 12156469 (M.D. Fla. Dec. 4, 2013) ...................................................... 3

*Moore v. Intuitive Surgical, Inc.*,
    995 F.3d 839 (11th Cir. 2021) ............................................................................... 7

*Nguyen v. Nissan N. Am., Inc.*,
    932 F.3d 811 (9th Cir. 2019) ..................................................................... 8, 9, 10

*Ollier v. Sweetwater Union High Sch. Dist.*,
    768 F.3d 843 (9th Cir. 2014) ................................................................................. 8

*In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*,
    93 F.4th 339 (6th Cir. 2024) ................................................................................. 5

*Paeschke v. Gen. Motors LLC*,
  2017 WL 4003382 (E.D. Wash. Aug. 18, 2017) ................................................... 4

*Sanchez v. Kia Motors America, Inc.*,
  2024 WL 4730654 (C.D. Cal. Nov. 7, 2024) ............................................. 2, 3, 6

*In re Takata Airbag Prod. Liab. Litig.*,
  2023 WL 2388488 (S.D. Fla. Jan. 31, 2023) ......................................................... 9

*W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*,
  65 F. Supp. 2d 1052 (N.D. Cal. 1998) ................................................................. 6

**Other Authorities**

Federal Rule of Evidence 702 ..................................................................... 1, 5, 6, 10

Rule 702(b) ................................................................................................................ 8

Rule 702(d) ................................................................................................................ 8

# INTRODUCTION

Plaintiffs have no answer for the pervasive deficiencies in purported automotive "expert" Darren Manzari's testimony, and they have not made him available for deposition during American Honda Motor Co., Inc.'s ("AHM's") time for responding to Plaintiffs' motion for class certification. Both failings require exclusion of his testimony.

Plaintiffs fail to cite current authority for their argument that dubious opinions of so-called experts are evaluated based on weight versus admissibility. Acting as a gatekeeper, under the new Federal Rule of Evidence 702, the federal trial court carefully evaluates opinions that are proffered as expert testimony. When an expert relies on "his mere say-so" to support his opinions, his testimony should be excluded. *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985-86 (9th Cir. 2020). Similarly, "[e]xpert testimony should not be admitted when it is speculative, it is not supported by sufficient facts, or the facts of the case contradict or otherwise render the opinion unreasonable." *Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333, at *6 (N.D. Cal. Oct. 28, 2014) (citing *United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004)). Here, Manzari's opinions suffer from every one of these problems.

Plaintiffs contend that Manzari's "extensive automotive background" exempts him from the obligation to investigate the highly technical issues on which he purports to opine. They admit that he has not inspected Plaintiffs' vehicles or any of the other vehicles at issue in this lawsuit, that he has performed no testing, and that he has applied no accepted scientific methodology in making his findings. Instead, he simply recites portions of the named Plaintiffs' self-serving, attorney-drafted declarations, a scattering of unverified complaints submitted to NHTSA, and cherry-picked snippets from AHM's public announcement of Recall No. 23V-431. Particularly notable for a so-called technical expert, he does not cite a single internal AHM technical or engineering document in support of his conclusion. Reading non-technical documents and parroting Plaintiffs' partisan allegations does not require specialized knowledge or expertise, but

1. that is all he does.

    Manzari was recently excluded by Judge Staton in *Sanchez v. Kia Motors America, Inc.*, 2024 WL 4730654, at *7 (C.D. Cal. Nov. 7, 2024) ("*Sanchez*") for the same reasons. In *Sanchez*, the court excluded his opinion that a cracked windshield rendered a vehicle unsafe on the ground that it "boils down to his say-so and is supported by only anecdotal consumer complaints." *Id.* Just as Plaintiffs do here, the *Sanchez* plaintiffs responded by pointing to Manzari's "experience." The court nevertheless excluded Manzari's testimony because he "does not explain" his views and "makes conclusory statements about those safety concerns." *Id.* The court also excluded his opinion that all class vehicles had a common defect, holding that he failed "to connect his automotive expertise to the proffered testimony." *Id.* Finally, the court excluded Manzari's testimony regarding estimated costs of repair because it was "vague and speculative" and "supported by no explanation, no connection to Manzari's expertise, and no methodological analysis." *Id.*

    Manzari's testimony in this case shares all these flaws and should be excluded for the same reasons. However, his testimony should also be excluded on due process grounds: having submitted his perfunctory report as a purported basis for class certification, Plaintiffs refused to make him available for deposition. Plaintiffs mislead the Court in suggesting that AHM was somehow dilatory for failing to serve a subpoena: Plaintiffs made clear Manzari would not appear. Decl. of M. Shortnacy (Dkt. 92-1) ("Shortnacy Decl.").[1] Having chosen to proffer expert testimony in support of class certification, Plaintiffs should have selected someone who would be physically present in the United States and willing to participate in the litigation process. Because AHM has not had an opportunity to cross-examine him regarding his opinions and will be unfairly prejudiced if the Court admits them on an incomplete record, Manzari's

---

[1] Moreover, a subpoena from a U.S. court is not enforceable in the Caribbean nation Trinidad and Tobago, a foreign jurisdiction that does not recognize the Hague Convention, without the issuance of letters rogatory and an order from a court in Trinidad and Tobago.

testimony should be excluded and Plaintiffs' motion for class certification denied.

# ARGUMENT

## I. Manzari's Safety Opinion Lacks Sufficient Facts and a Reliable Methodology.

As discussed in AHM's opening papers, Manzari offers no supporting facts or data and no methodology to support his conclusory opinion that the alleged audio issues pose a safety concern. *See* Mot. (Dkt. 92) at 5. The Opposition responds by repeating passages from his report wholesale and asserting they are sufficient. Plaintiffs rely entirely on Manzari's purported "experience," saying that his "extensive automotive background" and his review of (unspecified) AHM documents form a sufficient basis for his opinions. Opp. (Dkt. 102) at 7. But it is well-established that Manzari's background means nothing without a sound, accepted methodology supporting his opinions. *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) ("Personal observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert*'s most significant guidepost").

Manzari offers no such methodology. Merely regurgitating excerpts from named Plaintiffs' testimony and unverified NHTSA complaints does not pass muster. *MasForce Eur., BVBA v. MEC3 Co.*, 2013 WL 12156469, at *5 (M.D. Fla. Dec. 4, 2013) (expert testimony should be excluded when it has "no methodology and simply conveys information provided to the expert by an interested party"); *Sanchez*, 2024 WL 4730654, at *7 ("'An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy'") (quoting *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014)); *see also Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (excluding expert opinion in part because expert "often does no more than regurgitate information given to him by other sources"). Manzari's opinion is the exact sort of *ipse dixit* that led to his opinions being excluded in *Sanchez*. 2024 WL 4730654, at *7.

Plaintiffs point to *Johnson v. Nissan N. Am., Inc.*, 2022 WL 2869528, at *11

(N.D. Cal. July 21, 2022), but they fail to disclose that that case involved actual inspection of failed vehicle components, testimony from two different technical experts, and other examples of the experts doing far more than Manzari here. Plaintiffs next turn to *Paeschke v. Gen. Motors LLC*, 2017 WL 4003382, at *3 (E.D. Wash. Aug. 18, 2017) for the proposition that it is "not uncommon for experts to review NHTSA complaints in these types of cases." While it may not be uncommon for experts to review NHTSA complaints, *Paeschke* did not hold that a review of unverified complaints, without more, amounts to an accepted scientific methodology. To the contrary, the *Paeschke* court recognized that a review of such documents was "not the sole basis for [the expert's] opinions." *Id.* at *3.

Critically, Manzari has done nothing to verify the existence of a safety defect. Plaintiffs admit that Manzari has performed no inspections of Plaintiffs' vehicles and that he has conducted no testing of any kind. Opp. at 9. Further, while Manzari opines that the alleged audio symptoms present a risk of distraction and a resulting safety concern, Manzari Rpt. ¶ 28, he does not claim to have driven any of the Honda vehicles at issue or to have heard the alleged audio symptoms for himself. Nor does he appear to have spoken to the named Plaintiffs, each of whom has either expressly disavowed safety concerns or made clear through their conduct that they are not afraid to drive their vehicles. Kiser Decl. (Dkt. 95-5). ¶¶ 9,12,17 and Exs. D, G, N (Dkt. Nos. 95-9, 95-12, 95-19). Had he listened to Plaintiffs' proffered recordings of the audio popping and crackling, for example, he would have discovered that the sounds are barely audible: in one instance they cannot be heard over the sound of the radio, in another they cannot be heard by other vehicle occupants, and in another the obviously unconcerned vehicle occupants can be heard discussing dinner plans over a barely perceptible intermittent buzz. *Id.* ¶¶ 6-8, Exs. A-C (Dkt. 95-6, 95-7. 95-8). Manzari muses that "[a]ny sudden and unpredictable noise" can increase the risk of an accident, Manzari Rpt. ¶ 29, but mere hyperbole about potential risks cannot substitute for

empirical evidence.[2]

Finally, Plaintiffs point to the recall as evidence of a purported safety defect. Opp. at 7. In so doing, they mischaracterize the evidentiary record and their own pleading. They do not dispute that Honda issued the recall to address potential issues with the rear camera. None of the named Plaintiffs claim to have experienced rear camera display issues—which were exceedingly rare in the real world. *Indeed, the only "defect" alleged in the operative pleading pertains solely to audio popping and crackling.* FAC (Dkt. 20) ¶ 20. As discussed above, Manzari's wholly speculative concerns about potential driver distractions do nothing to show a safety concern.

Plaintiffs' other retort is to say these many problems with Manzari's opinions go to its weight, not admissibility. Opp. at 8. That is not the law. Rule 702 was updated in December 2023 "to correct some court decisions incorrectly holding that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 348 n.7 (6th Cir. 2024); *see also* ADVISORY COMMITTEE NOTES ON RULE 702—2023 AMENDMENT ("[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)."). Indeed, every case cited by Plaintiffs interpreting Rule 702 requirements predates the December 2023 amendments to that rule.

Plaintiffs' final response is to claim that Manzari is somehow specially qualified to opine on safety. Opp. at 9. This contention is objectively false. Manzari is no expert

---

[2] Plaintiffs also insist that "Honda fails to establish Manzari's safety opinion should be excluded." Opp. at 8. That is a misstatement of the standard of review. "[T]he proponent has the burden of establishing the pertinent admissibility requirements are met by a preponderance of the evidence." ADVISORY COMMITTEE NOTES ON RULE 702—2000 AMENDMENT (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)) (emphasis added); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (emphasis supplied).

on automotive safety requirements: just a few months ago he did not even know what federal safety standards were. *See* Mot. at 6 (citing deposition testimony in *Sanchez*). Judge Staton properly excluded Manzari; this Court should as well.

## II. Manzari's Opinion Relating to the Existence of a Unitary Defect is Not Based on Sufficient Facts or a Reliable Methodology.

Manzari never defines nor identifies the supposed defect, despite claiming that there is one. Instead, he simply assumes that all putative class vehicles suffered from a common defect arising from "the use of defective coaxial cables." Manzari Rpt. ¶ 19. He also assumes that any popping or crackling noises necessarily result from "defective coaxial communication cables." *Id.* ¶¶ 19, 23. His opinion is a tautology: an audio popping or crackling sound necessarily means there is a defect in a vehicle's coaxial communication cables. As pointed out in AHM's opening brief, however, Manzari offers no objectively verifiable evidence, and no scientific methodology of any kind, to support this conclusion. Mot. at 8. As named Plaintiffs' own experiences confirm, popping and crackling sounds can result from issues wholly unrelated to the MOST ring or its coaxial cables. Kiser Decl. (Dkt. 95-5) ¶¶ 10, 13, Exs. E, H, I, J (Dkt. 95-10, 95-13, 95-14, 95-15). And the fact that some people reported audio popping and crackling does not mean that *all* putative class vehicles are defective.

Plaintiffs assert it is enough for Manzari to say he relied on AHM documents (without saying precisely which ones) and NHTSA complaints. Opp. at 9-12. But this is the exact sort of non-methodology that led to Manzari being excluded in *Sanchez*, with that court finding he failed to connect his purported automotive expertise to the "proffered testimony," as required under Rule 702. *Id*. And while he cites Honda's recall announcement as evidence of a common defect, he ignores information in the very same document estimating a potential defect percentage of approximately 50% of the vehicles recalled—clearly not all putative class vehicles. Rebuttal Declaration of Eldon G. Leaphart (Dkt. 94-2) § 3.6(1). Manzari cites no empirical evidence to suggest that this number is incorrect. "When expert opinions are not supported by sufficient

6

facts, or when the indisputable record contradicts or otherwise renders the opinions unreasonable, they cannot be relied upon." *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1060 (N.D. Cal. 1998), *aff'd*, 190 F.3d 974 (9th Cir. 1999).

Plaintiffs' only rejoinder is that Manzari "relies on his automotive background and experience." Opp. at 10. But background and experience mean nothing if an expert does not bother to investigate or collect or consider available evidence. Although Manzari is plainly unqualified to render an opinion on the Honda vehicles at issue (as demonstrated by the numerous factual mistakes in his report), experience and methodology are "separate prongs of the *Daubert* inquiry that answer two separate questions." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 852 (11th Cir. 2021). Even "[c]onflating the inquiries"—as Plaintiffs do here—"is legal error." *Id*. Even assuming Manzari had sufficient experience, he still needs to employ a valid methodology to support his opinions.

Manzari apparently knows very little about the Honda vehicles at issue in Plaintiffs' motion. He does not claim to have driven or popped the hood on any of them, much less to have examined the different MOST network configurations and components used in the different models and model years at issue. It is hardly surprising that his report is rife with basic factual errors. Manzari's opinion is so unreliable—and his methodology and analysis so lacking—that he incorrectly assumes that the MOST ring components are identical across all vehicles. But the component parts used in each vehicle "are not the same," and differences between and among the models and model years bear directly on Manzari's assessment of a "unitary" defect. *See* Mot. at 9-10, Kalwasinski Decl. (Dkt. 94-1) ¶¶ 12-18.[3] Had Manzari done any homework beyond reading a few publicly available documents, he might have learned that material

---

[3] Plaintiffs misleadingly assert that Mr. Kalwasinski identified a single difference in the putative class vehicles: the number of components connected by the MOST ring. Opp. at 11. In reality, Mr. Kalwasinski identified numerous differences, none of which Plaintiffs (or Manzari) address. Kalwasinski Decl. ¶¶ 12-18.

differences exist in the components and vehicles at issue before baldly asserting that all putative class vehicles share an identical defect.

Plaintiffs insist that Manzari's profound misunderstanding of basic facts is "not grounds for excluding Manzari's opinion," and that the Court should admit his unadorned—and unsubstantiated—conclusion that "the communication coaxial cables … are defective across all" Class Vehicles. Opp. at 11-12. However, Rule 702(b) states that admissibility requires that testimony be "based on sufficient facts or data." That standard necessarily supposes *correct* data. Similarly, Rule 702(d) requires finding "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." There is nothing reliable about opinions that are based on a wrong understanding of the facts. Mot. at 10.

Manzari's unsupported opinion that AHM may not have provided an effective repair is also directly contradicted by the record evidence in the case. Kalwasinski Decl. ¶ 50. Because he is offering nothing more than his unadorned say-so, he should be excluded. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 852 (9th Cir. 2014) (expert testimony "based on personal opinions and speculation rather than on a systematic assessment" is excludable).

**III. Manzari's "Damages" Opinion Is Unreliable.**

Manzari estimates "damages" at $295 per vehicle based on the so-called "cost of repair." Manzari Rep. ¶ 54. By his own description, he takes it upon himself to "estimate the amount by which owners overpaid for their vehicles at the time of sale/acquisition by using the cost of repairing" the alleged defect. *Id.* at ¶ 48. Putting aside the fact that Manzari is wholly unqualified to offer a "damages" opinion (and has been excluded in the past for doing precisely what he attempts to do here, Mot. at 11-12), a cost-of-repair model is not an appropriate measure of damages in an automotive class action where a free repair has already been provided to all. Kalwasinski Decl. ¶ 50.

Plaintiffs' argument to the contrary is based entirely on *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019). But *Nguyen* is distinguishable and inapplicable,

8
REPLY IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF DARREN MANZARI

including because it was decided under California law which undisputedly does not apply here. Although *Nguyen* states that benefit-of-the-bargain damages generally "focus" on the benefits received at the time of sale, it nowhere held that post-sale factors were categorically irrelevant to calculation of damages. At most, *Nguyen* criticized the district court for "focus[ing] the damages inquiry on [the] potential post-purchase value" the plaintiff derived from using the allegedly defective vehicle in the period before the vehicle's clutch malfunctioned. *Id.* at 819–21. The *Nguyen* court never considered or addressed the availability of countermeasures and no-charge repairs. In fact, the defendant in *Nguyen* never provided a remedy to consumers for its alleged defect, and plaintiffs were required to pay out of pocket for repairs. *Nguyen,* 932 F.3d at 814–15, 820. Here, in contrast, record evidence confirms that AHM's free countermeasures are effective and that putative class members will be reimbursed if they paid repair costs prior to the recall—thus providing Plaintiffs with the full benefit of their bargain. Kalwasinski Decl. ¶ 50.

Courts applying *Nguyen* have recognized that efficacious no-charge repairs provided after the date of sale, such as the recall remedy provided here by AHM, can eliminate basis-of-the-bargain damages. In *In re General Motors Ignition Switch Litig.*, 427 F. Supp. 3d. 374, 378-79 (S.D.N.Y. 2019), the court held that even following *Nguyen*, "a plaintiff's duty to avoid or mitigate damages means that post-sale repairs are relevant to the calculation of benefit-of-the-bargain damages, even though such damages are initially calculated according to the bargain that was struck at the time of sale." Similarly, in *In re FCA US LLC Monostable Electronic Gearshift Litigation,* 2022 WL 4211149, *4 (E.D. Mich. Sep. 22, 2022), the court distinguished *Nguyen* on the ground that it did not involve a recall, holding that "the complete repair of an alleged defect forecloses recovery on a benefit-of-the-bargain theory." *See also In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 2388488, at *3 (S.D. Fla. Jan. 31, 2023) (recalls that fully fix an alleged defect at no cost eliminate benefit-of-the-bargain damages).

For all these reasons, Manzari's back-of-the-envelope cost-of-repair calculation

should be excluded. *First*, it has no probative value in determining benefit-of-the-bargain damages under the authorities cited above. The free recall repair eliminates benefit-of-the-bargain damages, no matter how calculated. *Second*, Plaintiffs admit that his calculation makes no attempt to account for the fact that AHM is already providing the repair in question at no charge and offer no explanation of relevance beyond their overreaching interpretation of *Nguyen*. *Third*, Manzari has no expertise in computing "benefit-of-the bargain" damages in any event, which led to the exclusion of his cost-of-repair damage theories in at least two other cases and should do so here as well. *Fourth,* his calculation is unreliable because it is based on unreliable evidence. Plaintiffs respond only that "AHM does not challenge the accuracy of his calculations." Opp. at 15. To the contrary, AHM moved to exclude them as unreliable. Rule 702 places the burden on Plaintiffs to show that his testimony is reliable and admissible. They cannot do so. Indeed, they admit that his calculations are not reliable, conceding that Manzari will update them upon receiving correct information from AHM. *Id.* And while Plaintiffs blame AHM for supposed delays in document production, Opp. at 15, had they truly felt AHM was obstructing discovery, they could have moved to compel at any time in the many months preceding their class certification motion. They did not do so, and in fact did not pursue fact discovery until this Court set the deadline for their class certification motion on October 3, 2024. Dkt. 78.

## CONCLUSION

For the reasons stated above and its opening motion, AHM respectfully requests that its Motion to Exclude Darren Manzari's testimony and proffered opinions be granted.

Dated: November 18, 2024         Respectfully submitted,

            SHOOK, HARDY & BACON L.L.P.
            By: /s/ *Michael B. Shortnacy*
              Michael B. Shortnacy

            Attorneys for Defendant
            AMERICAN HONDA MOTOR CO., INC.

**Certificate of Compliance [L.R. 11-6.2]**

The undersigned, counsel of record for Defendant, certifies that this brief is 10 pages long, which complies with the page limit set by the Court's August 14, 2024 Standing Order, and contains 3,432 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 18, 2024            By: */s/ Michael B. Shortnacy*
                                        Michael B. Shortnacy